NO. 5-96-0091

IN THE 

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_________________________________________________________________

ALBERT P. LAUMAN,                    )  Appeal from the 

                                     )  Circuit Court of

     Plaintiff-Appellee,             )  St. Clair County.  

                                     )

v.                                   )  No. 90-L-1240

                                     )     

VANDALIA BUS LINES, INC.,            )  Honorable

                                     )  Jerome F. Lopinot, 

     Defendant-Appellant.            )  Judge, presiding.  

_________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court: 

Defendant, Vandalia Bus Lines, Inc. (Vandalia), appeals from a judgment entered by the St. Clair County circuit court on the jury verdict in favor of plaintiff, Albert P. Lauman.  The case involves a September 13, 1988, collision between a school bus driven by Ethel Miles, an employee of Vandalia, and a small truck driven by Lauman.  On appeal, Vandalia argues that (1) it was denied a fair trial by the improper conduct and comments of Lauman's attorney; (2) the court erred by allowing hearsay statements of two witnesses to be read to the jury; (3) discovery issues were improperly raised before the jury; (4) the jury was improperly instructed; (5) the damage award was excessive; and (6) the judgment should be reversed for an accumulation of trial errors.  We affirm.

I. FACTS

Certain facts about this accident are not disputed.  At the time of the accident, Miles was driving a school bus with one adult passenger, Ernestine Price, who was a special education aide.  As a part of her bus route, Miles was attempting to make a left turn onto State Street in East St. Louis when Lauman's Toyota truck and the bus collided.  The intersection consists of State Street, running east and west, 70th Street, which is perpendicular to the north of State Street, and the driveway of the Martin Luther King Junior High School (the school), which is perpendicular to the south of State Street.  State Street has two lanes of traffic running east toward Belleville and two lanes running west into East St. Louis.  Miles was attempting to turn left, or west, onto State Street, from the school's driveway, and Lauman was driving east on State Street, in the inside lane, the lane furthest from the curb.  All four corners of the intersection have stop signs.  The stop sign controlling Lauman's direction of traffic is set back approximately 26 feet to the west of the intersection of State Street with 70th Street and the school's driveway.  

Miles testified that she stopped at the stop sign before pulling onto State Street.  Lauman was injured in the accident and does not remember anything about it.  Various witnesses gave varying accounts of how the accident occurred and who was at fault.  Thus, it was up to the jury to sort out what most likely happened.   In addition to the evidence concerning the accident, plaintiff also presented evidence to support his theory that Vandalia's false or incomplete answers to his discovery requests amounted to admissions of guilt by conduct.  Most of Vandalia's arguments are directed at this part of Lauman's case.  Lauman asserts that Vandalia concealed two written statements signed by Miles:  the accident report drafted the day of the accident and a statement prepared less than a month later, on October 6, 1988.  Neither of these statements list Ed Robinson or Ned Smith as witnesses, although Robinson and Smith claimed in depositions that they each spoke to Miles immediately after the accident.  Lauman's argument is that by concealing Miles's first two statements, Vandalia was able to mislead Lauman into believing that Robinson and Smith were legitimate eyewitnesses, when in fact, according to Lauman, their accounts, that Miles stopped at her stop sign but that Lauman ran his stop sign at a high rate of speed, are fabricated.

In plaintiff's opening statement, his attorney, Bruce N. Cook, stated, "[I]n addition to what happened in the accident, we're going to prove fraud and concoction of evidence by the Defendant."  Vandalia's attorney, John W. Leskera, objected.  Again in his opening statement, Cook said that it would be apparent to the jury that Smith and Robinson lied.  Again, Leskera objected.  Finally, Cook stated in his opening that he expected to prove that "the accident was Vandalia Bus's fault, that in order to prevent themselves from liability, they fabricated evidence, that people have not told the truth, [and] that things which were sworn were false ***."  Again, Leskera objected.

The pertinent evidence presented at trial is as follows:  Jeff Schleifer took pictures of the accident scene and a statement from Miles.  He was interested in witnesses, but Miles did not mention Robinson or Smith as witnesses, nor did Schleifer see Robinson or Smith at the scene.  Schleifer later testified that he did not ask Miles about other witnesses.  

Over Vandalia's objection, Lauman's attorney read the deposition testimony of Miles to the jury.  In her deposition, Miles stated that the accident occurred at about 1:20 p.m. as she was attempting to make a left turn from the school onto State Street to go to her next scheduled stop at 1:45 p.m.  In her deposition, she stated that she saw both Smith and Robinson immediately after the accident, as she was calling back to "base" to report the accident.  In her deposition, Miles related the accident as follows:

"ETHEL MILES:  ***  I went up to 70th Street to the stop sign to get ready to go.  Before I pulled out, there was a car coming on my right and a bus was coming on my left.  But the bus was farther down.  So this car was coming kind of quick on my right, so I stopped to make sure he was going to come to a complete stop.  Okay.  By the time he stopped, I looked back to my left and the bus was coming up on the stop sign.  Okay.  I eased on out to get ready to make my turn.  Before I made my turn, that's when I spotted Mr. Lauman coming down the street, you know, pretty fast.

***

He was coming from my left and he was going pretty fast.  ***  So I stopped, thinking, `Well, maybe he will go around me.'  But it looked like his head was turned to the left.  And by the time he turned around to look up, he was under my bus  and I was scared to speed up to get out of the way, scared he would hit my gas tank in the back, so I stopped, thinking he would look up and go around me."  

Miles estimated Lauman's speed at 55 to 60 miles per hour at the time of the accident.  

Over Vandalia's objection, plaintiff also read the deposition testimonies of Ed Robinson and Ned Smith.  Robinson testified that he had been working for Vandalia as a bus driver for about a week at the time of the accident.  He testified that he was on a Bi-State bus, headed east and stopped at the stop sign at the intersection of 70th and State Streets, when he witnessed the accident.  He testified that the Vandalia bus was attempting to turn left to head east to East St. Louis at the time of the accident.  According to Robinson, Smith was on the same bus, and they exited the bus together to go check on the people in the accident.  Smith testified that after the accident, he drove the Vandalia bus back to the garage.

Ned Smith testified in his deposition that he also saw the accident from the Bi-State bus, which he claimed was heading west on State Street at the time of the accident.  He testified that the Vandalia bus was attempting to make a right turn to head east.  He estimated Lauman's speed at about 35 miles per hour at the time of the accident.  He testified that he did not get off the Bi-State bus after the accident.  He was not working for Vandalia on the day of the accident, but he went to work for them shortly afterwards and was employed by Vandalia when he gave the deposition.  Smith testified that although he knew Ed Robinson, he did not see him that day.

Reginald Woods was the assistant terminal manager for Vandalia when the accident occurred.  He testified that he went to the scene and took pictures.  Woods testified that Robinson could not have driven the school bus away from the scene of the accident because the bus was disabled and had to be towed away.

Dennis Streif was vice president of Vandalia at the time of the accident.  He testified that he signed the discovery sent to plaintiff.  He got his information from the accident reports, but he did not list Miles's statements of September 13, 1988, or October 6, 1988, even though he knew that she filled out the accident report form on September 13, 1988.  He also did not list either Robinson or Smith as witnesses to the accident.   

Rosie Doss testified that she was driving the Bi-State bus and observed the accident.  She testified that her bus was headed west on State Street, and that she was stopped letting off passengers at the stop sign at the intersection of State and 70th Streets at the time of the accident.  She testified that Lauman stopped at the stop sign on State Street, but that Miles's bus did not stop at the stop sign for the school's driveway.  

The police officer who investigated the accident testified that he was called to the scene at 1:42 p.m. on September 13, 1988.  He was not trained in accident reconstruction, and he stated that all he knew about the accident was what he was told.  Miles told him that Lauman ran his stop sign and then ran into her.  Lauman did not remember anything.  

Ernestine Price, Miles's passenger, testified that Miles picked her up at the school that day at 1:30 p.m.  According to Price, Miles stopped at her stop sign, but Lauman did not stop at his.  She testified that she observed Miles look both ways as she stopped at the stop sign, but she was impeached with her deposition testimony, where she testified that she was not paying any attention to Miles as they pulled out into the intersection.  She also contradicted Miles by testifying that the bus was moving when the accident occurred.  Miles testified that she had the bus stopped at the time of the accident.

Carolyn MacDonald testified that she was standing in front of the school between 1:30 and 1:45 p.m. when she observed the collision.  She also testified that Miles stopped at her stop sign, but that Lauman did not.  She remembered the Bi-State bus at the stop sign on State Street, but she testified that nothing obstructed her view of Lauman's truck as he rolled through the intersection at a high rate of speed.  However, she admitted after looking at the pictures that if the Bi-State bus was parked at the stop sign, she would not have been able to see Lauman's truck until after it had already passed the stop sign. 

Vandalia called Robinson as a witness.  He again testified that the Bi-State bus was stopped at the stop sign on State Street at the time of the accident, and that Lauman's truck was in the inside lane and failed to stop at the stop sign.  He contradicted Miles's testimony by saying that he called Vandalia's office from the school bus to report the accident.  He was impeached on several points of his testimony by Lauman's attorney.  When questioned about his inconsistencies, he stated several times that the other person must be mistaken.  

Vandalia also recalled Miles as a witness.  She testified that the Bi-State bus did not block her view of the approaching truck, because the Bi-State bus was parked about a block down the street, closer to the intersection of 69th and State Streets than the intersection of 70th and State Streets.  She was also impeached by several inconsistent statements she gave in her deposition, and she admitted that she was running late when the accident occurred.  She also admitted that she told her supervisor that he should talk to Ned Smith about the accident.  

In Cook's closing argument, he argued, "[A] fraud has been perpetrated here, or at least a fraud has been attempted to be perpetrated here on my client, who is defenseless, was knocked silly in the accident, life ruined, and he can't remember it."  He argued that the key to the case was the direct contradiction between the accounts of the accident given by Miles and Doss.  He also argued, over Vandalia's objection, that Vandalia failed to bring in Miles's schedule to refute the inference that the accident happened because Miles was in a hurry to get to her next stop.

The trial court denied Vandalia's motions for a mistrial and for a directed verdict.  The jury returned a verdict in favor of Lauman and against Vandalia, awarding a total of $1,800,000 in damages and reducing Lauman's recovery to $1,620,000 by a finding that he was 10% contributorily negligent.

II. DISCUSSION

Vandalia makes several arguments concerning the improper comments and conduct of Lauman's attorney.  Vandalia argues that counsel's behavior and comments deprived it of a fair trial.  We have summarized a few of the comments and tactics of Lauman's attorney, but Vandalia is correct that throughout the trial, Cook made comments and used tactics that were extremely aggressive.  Nevertheless, our review of the record in its entirety convinces us that Vandalia received a fair trial.

The first point Vandalia raises in its improper-conduct argument is that Cook improperly accused Vandalia of fraudulent conduct without pleading a cause of action in fraud.  Vandalia contends that Cook loosely used the term fraud, which cast a "cloud upon the honesty of" Vandalia and deprived Vandalia of a fair trial.  Vandalia's argument is meritless.  Cook's use of the term fraud was anything but loose.  It was expressly intended to convey that the jury should find Vandalia guilty of an admission of guilt by its conduct.  

When a party alleges that another party has fraudulently withheld evidence, the jury is entitled to receive this information along with all of the other information relevant to the case.  It is then up to the jury to sort out which allegations are correct and the weight to give all of the evidence.  
Kearney v. Brakegate, Ltd.
, 263 Ill. App. 3d 355, 362 (1994).  "Admission of the fact of non-disclosure or late disclosure is governed by ordinary common law principles of evidence, that is, relevancy, competency and materiality."  
Carter v. Chicago & Illinois Midland Ry. Co.
, 130 Ill. App. 3d 431, 461 (1985).  

In the case at bar, Cook alleged that Vandalia initially fabricated the statements of Robinson and Smith and that Vandalia then improperly withheld Miles's statements which did not list Robinson or Smith as witnesses, evidence that, if believed, could show the jury that Robinson and Smith did not observe the accident.  If Cook had alleged fraud in regards to the fabrication and nondisclosure of evidence without presenting evidence to prove the fabrication and nondisclosure, then Vandalia would have been unfairly prejudiced.  However, Cook was able to present evidence which, if believed, would tend to discredit Vandalia's witnesses and cast doubt upon their accounts about how the accident occurred. Because Cook had a reasonable basis in the evidence for his accusations of dishonesty and bad faith against Vandalia, the trial court did not abuse its discretion in allowing the statements to be made, and Vandalia was not thereby denied a fair trial.  
Augenstein v. Pulley
, 191 Ill. App. 3d 664 (1989);
 Manninger v. Chicago & Northwestern Transportation Co.
, 64 Ill. App. 3d 719 (1978).          Vandalia next argues that "the most unprofessional aspect of the presentation of plaintiff's case came in the form of a series of unprecedented attacks directly on opposing counsel."  However, Vandalia only cites to one comment during the evidence phase of the trial that directly impugns opposing counsel.  Vandalia cites one other comment made during trial, but it is aimed at Vandalia personnel, not at Leskera.  The final statement about which Vandalia complains was made during closing argument, and we will address that comment separately.  

The comment Cook directed at Leskera during the trial is:

"MR. COOK:  Well, I don't know how many times that you wrote things in your answers to interrogatories were untrue, but if you want to identify them, you may." 

This remark is clearly improper, but it is not of such significance that it alone deprived Vandalia of a fair trial.  We cannot know how the statement affected the jurors.  It is possible that they held it against Cook rather than against Leskera.  Nevertheless, the record is clear that Lauman's case was against Vandalia, the defendant, not Leskera, the attorney.  The error here is not reversible because Vandalia has not shown that it was substantially prejudiced by it or that it unduly affected the outcome of the trial.  
Skelton v. Chicago Transit Authority
, 214 Ill. App. 3d 554 (1991).

Vandalia points out several statements by Cook in his closing argument wherein Cook either impugned Leskera's integrity or improperly expressed his own opinion and belief.  Without reiterating those comments in this opinion, suffice it to say that Vandalia is correct that Cook's closing argument is littered with statements of personal belief and arguments that Vandalia's witnesses were lying and that Vandalia had not only manufactured the testimony of Robinson and Smith but withheld evidence that would tend to discredit the statements of Robinson and Smith.  However, we find the closing argument of Lauman's counsel to be vigorous representation rather than improperly prejudicial conduct.

Attorneys are permitted wide latitude in closing argument.  
Guzeldere v. Wallin
, 229 Ill. App. 3d 1 (1992).  A judgment will not be reversed unless the challenged remarks were of such a character that they prevented the opposing party from receiving a fair trial.  
Lewis v. Cotton Belt Route-St. Louis Southwestern Ry. Co.
, 217 Ill. App. 3d 94 (1991).  In determining whether a party has been denied a fair trial, due to an improper closing argument, a reviewing court gives considerable deference to the trial court, which is in a superior position to assess the accuracy and effect of counsel's statements.  
Guzeldere
, 229 Ill. App. 3d at 15.  In addition, even where a party has preserved the issue, counsel's improper arguments will not warrant reversal without a showing of substantial prejudice.  
Ryan v. Katz
, 234 Ill. App. 3d 536, 542-43 (1992).

The improper remarks made by Lauman's attorney in closing argument were not prejudicial because the jury was properly instructed that counsels' arguments were not to be considered as evidence.  
Lecroy v. Miller
, 272 Ill. App. 3d 925, 933 (1995).  More importantly, given the proper and serious impeachment of most of Vandalia's witnesses, the evidence was not closely balanced but was heavily in favor of plaintiff.  In such a circumstance, any error in Cook's closing argument was not prejudicial.  
Lecroy
, 272 Ill. App. 3d at 934.  We hold that Vandalia's claims of unsubstantiated accusations of fraud, lying, and deceit by Lauman's attorney did not deprive Vandalia of a fair trial, for the reason that the claims were substantiated if the jury chose to believe Lauman's evidence over that of Vandalia.

Vandalia next makes a related argument, that the trial court improperly permitted Lauman to present evidence and advance arguments to the jury about Vandalia's misconduct during discovery.  Vandalia argues that the evidence was inadmissible, because Vandalia provided Lauman with the information well in advance of the trial.  However, we find that the evidence was properly before the jury.  Whether Vandalia initially left Miles's two statements out of its answers to Lauman's discovery due to inadvertence, confusion, or intentional misconduct is not the deciding question, nor is the timing of when the correct information was finally provided.  Rather, the proper focus is whether the fact of the misinformation shed some light on an issue to be decided by the jury.  

Here, the evidence was presented to show that Vandalia's witnesses, who claimed that Lauman ran the stop sign and was, therefore, liable for the accident, were not worthy of belief.  The credibility of the witnesses and the weight, if any, that should be accorded their testimony are always proper issues for the jury.  
Kern v. Uregas Service of West Frankfort, Inc.
, 90 Ill. App. 3d 182 (1980).  Thus, the trial court did not err in allowing Lauman to present the evidence to the jury, which was free to accept or reject Cook's arguments that the discovery problems made defendant's witnesses unbelievable.  See 
Kearney
, 263 Ill. App. 3d at 360-62 (jury should be allowed to receive evidence of discovery misconduct).  In support of our decision that this evidence was properly before the jury, we note that Vandalia was not hindered in any way from presenting evidence to refute Cook's allegations of fraud, but that either Vandalia chose not to present any rebuttal or none was available.  

Vandalia next attacks the admission into evidence of the discovery depositions of Robinson and Smith, arguing that they were hearsay.  The hearsay rule prohibits introducing into evidence a written or oral out-of-court statement offered to prove the truth of the matter asserted.  
People v. Lawler
, 142 Ill. 2d 548 (1991).  However, an out-of-court statement offered for some independent purpose, rather than the truth of the matter asserted, is not hearsay.  
Kochan v. Owens-Corning Fiberglass Corp.
,   242 Ill. App. 3d 781, 806 (1993).  

Clearly, Lauman read the deposition testimony of Robinson and Smith as an admission against Vandalia, for the purpose of impugning not only the credibility of Robinson, but also the rest of Vandalia's witnesses.  The inconsistencies between the two statements were made apparent by reading them one after the other.  Although they both claimed to be on the same bus on the same street, Robinson claimed that the Bi-State bus was headed east and the school bus was turning left to head east to East St. Louis.  The evidence was clear, however, that if the school bus was turning left from the school driveway, it was going to head 
west
 toward East St. Louis.  In contrast to Robinson's testimony, Smith testified that the Bi-State bus was headed 
west
, and that the school bus was turning 
right
 to head east 
to Belleville
, contrary to the testimony of every other witness.  Robinson testified at trial, he was impeached several times, and his deposition and trial testimonies were at odds with the other evidence.  For example, Robinson was adamant in his testimony that he drove the school bus back to the garage after the accident, even though the evidence from other Vandalia witnesses made it clear that the bus suffered broken tie rods in the collision and had to be towed away.  Robinson contradicted Miles's testimony that she called her employer after the accident.

The point of reading these two depositions could not possibly be for Lauman to assert the truth of Robinson's or Smith's statements but was unquestionably to highlight the unbelievability of their statements and to raise the question of whether Vandalia had resorted to concealment of real evidence and fabrication of false statements in order to bolster an otherwise weak case.  This evidence was not hearsay and was relevant for the jury's consideration.   

Vandalia next argues that the jury was improperly instructed.  First, Vandalia contends that plaintiff's instruction 19, given over its objection, was an improper comment on the evidence rather than an instruction on the law.  The instruction is as follows:

"The court has found as a matter of law that the road from King School that intersects with State Street is a private road or drive."  

This instruction is not contained in the Illinois Pattern Instructions (hereinafter referred to as IPI).  Vandalia argues that the instruction impermissibly highlighted evidence favorable to Lauman.  

In Illinois, jury instructions must be "simple, brief, impartial, and free from argument."  134 Ill. 2d R. 239(a).  Argumentative instructions are unacceptable because they are not fair and impartial statements of the law but are adversarial statements highlighting favorable and unfavorable evidence with partisan overtones. 
 Lay v. Knapp, 
93 Ill. App. 3d 855  (1981).  We do not find plaintiff's instruction 19 to be argumentative or partisan, but it is a clear statement about an intersection that is unusual and hard to understand without the instruction.  Therefore, it is acceptable unless the court abused its discretion in determining that the jury needed a non-IPI instruction.     

It is improper to give a non-IPI instruction when a pattern instruction on the same subject is available.  If a unique factual situation or point of law is presented, however, a trial court may give a non-IPI instruction if it is accurate and has no improper effect on the jury.  While each party has a right to have the jury instructed on its theory of the case, the trial court has discretion to decide which issues have been raised by the evidence and which instructions it will read to the jury.  
Gordon v. Chicago Transit Authority
, 128 Ill. App. 3d 493 (1984).

The problem with plaintiff's instruction 19, according to Vandalia, is that another IPI instruction, which was properly given, is in conflict with this instruction.  Defendant's instruction 3 sets forth the duty of a driver at a stop intersection:  

"Every driver of a vehicle approaching a stop intersection *** shall stop *** before entering the intersection.  After having stopped, the driver shall yield the right-of-way to any vehicle which has entered the intersection from another roadway or which is approaching so closely *** as to constitute an immediate hazard ***.  Chapter 95½, Section 11-904, Illinois Revised Statute 1987."  

Vandalia contends that defendant's instruction 3 is mutually exclusive to another instruction, plaintiff's instruction 21, which is as follows:

"The driver of a vehicle about to enter or cross a highway (such as State Street) from a private road or driveway should yield the right of way to all vehicles approaching on the highway to be entered.  Chapter 95½, Section 11-906, Illinois Revised Statutes."

Vandalia argues that neither plaintiff's instruction 19 nor plaintiff's instruction 21 should have been given, because they "misled the jury into believing that the plaintiff, because he was on a highway, had an absolute right-of-way at the intersection even though he had a duty to obey a stop sign which controlled traffic in the direction he was travelling."  Vandalia misinterprets these instructions.  Taken as a whole and considered in light of all of the other instructions given, these three instructions are neither improper nor confusing.  

Contrary to Vandalia's assertion, there is nothing inconsistent in the statement that two people at two stop signs in an intersection must both stop at their stop signs and must yield the right-of-way to other vehicles that have already entered the intersection or which otherwise constitute a hazard, yet the person stopped on the private drive must not only stop at the stop sign but must yield to drivers at the other stop signs in the intersection.  The jury was not told that the Vandalia bus was required to yield forever to all traffic.  The jury was simply told that the intersection included a private roadway and that the bus stopped at that driveway was required to yield to "all vehicles 
approaching on the highway to be entered
."  (Emphasis added.)  Ill. Rev. Stat., 1987, par. 95½, par. 11-906.  It was clear from the jury instructions that Lauman's lane of traffic was also governed by a stop sign and that he had to yield to vehicles who entered the intersection before him or that otherwise constituted a hazard.   Thus, the effect of these instructions was to give the jury the responsibility to decide who entered the intersection first, whether any other vehicle was a hazard at the time that plaintiff or defendant pulled into the intersection, and whether Lauman's truck was already "approaching on the highway" the Vandalia bus was about to enter when Miles pulled out.  The instructions are proper.

We note that Vandalia did not offer an instruction to inform the jury of the following:  

"When 2 vehicles approach or enter an intersection from different roadways at approximately the same time, the driver of the vehicle on the left must yield the right-of-way to the vehicle on the right."  Ill. Rev. Stat. 1987, ch. 95½, par. 11-901(a).

The failure of Vandalia to offer this instruction is puzzling, because it would have been reasonable for the jury to conclude from the evidence that Lauman and Miles reached their respective stop signs at approximately the same time.  Since Miles's school bus was on the right, she would have had the right-of-way if the jury concluded that she and Miles reached their respective stop signs at the same time.  Had this instruction been given, it would have been proper.  

The point is that there is no authority in the law and no common sense reason to declare that the statutory provisions contained in sections 11-901, 11-904, and 11-906 of the Illinois Vehicle Code are mutually exclusive.  Ill. Rev. Stat. 1987, ch. 95½, pars. 11-901, 11-904, 11-906.  They are not, and the instructions given in this case, specifically plaintiff's instructions 19 and 21 and defendant's instruction 3, merely served to clarify the drivers' various statutory duties. 

"Nonpublishable material omitted under Supreme Court Rule 23."

III. CONCLUSION

For all of the reasons stated, we affirm the judgment of the trial court.

Affirmed.

MAAG, J., and WELCH, J., concur.