2025 IL App (1st) 241144-U

No. 1-24-1144

Order filed June 30, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| YVETTE STEPHENSON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 13511 |
| | ) | |
| JAMILAH OKOE, M.D., and ADVOCATE HEALTH | ) | |
| AND HOSPITALS CORPORATION d/b/a Advocate | ) | |
| Medical Group, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Advocate Heath and Hospitals Corporation d/b/a | ) | Brendan A. O'Brien, |
| Advocate Medical Group, Defendant-Appellee). | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err regarding the admissibility of evidence concerning plaintiff's expert witness's credentials and defense expert witness's testimony regarding plaintiff's pain tolerance. Also, defense counsel's erroneous statements about plaintiff's expert witness during cross-examination and closing argument did not deprive plaintiff of a fair trial.

¶ 2    In this medical malpractice action, the jury returned a verdict in favor of defendant Advocate Health and Hospitals Corporation, d/b/a Advocate Medical Group.

¶ 3    On appeal, plaintiff Yvette Stephenson argues that (1) the trial court erred by allowing certain evidence concerning plaintiff's expert witness's membership status in a voluntary physician's group, (2) defense counsel's violation of the trial court's *in limine* ruling regarding that expert witness's membership status in the group deprived plaintiff of a fair trial, and (3) the trial court erred by admitting the factually unfounded speculative opinion testimony of a defense expert witness regarding plaintiff's pain tolerance.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                  I. BACKGROUND

¶ 6    Plaintiff sued Dr. Jamilah Okoe to recover compensatory damages for injuries plaintiff allegedly suffered on July 23, 2015. Plaintiff alleged that Dr. Okoe breached the standard of care by failing to maintain visualization during a dilatation and curettage procedure (D&C) and mishandling the Morcellator blade so as to perforate plaintiff's uterus and sigmoid colon, thereby causing massive bleeding, an abdominal infection, an emergency repair surgery, colostomy placement, and subsequent surgery and rehabilitation. Plaintiff also alleged that Dr. Okoe breached the standard of care by failing to follow up and treat plaintiff's uterine and colon perforation shortly after the D&C when she had atypical complaints of pain, abnormal vital signs, and diaphoresis. By stipulation, the parties dismissed Dr. Okoe at the commencement of the trial and substituted her employer, Advocate Medical Group, as the defendant because agency was admitted.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7 Plaintiff moved *in limine* to exclude any evidence regarding a complaint a physician made in 2015 to the American College of Obstetricians and Gynecologists (ACOG) against plaintiff's obstetrician-gynecologist (OBGYN) expert witness, Dr. Richard Luciani, and ACOG's request that Dr. Luciani file an answer. The complaint was filed by a physician whom Dr. Luciani had testified against in a malpractice matter unrelated to the instant case. Plaintiff argued that this collateral issue was not relevant since ACOG, which is a voluntary political, lobbying, and professional organization of OBGYNs in the United States, did not make any adverse finding against Dr. Luciani, who had filed an answer to the complaint, heard nothing further from ACOG regarding the matter for one month, and then resigned from ACOG in 2015.

¶ 8 In response, defendant argued that the ACOG issue was relevant to Dr. Luciani's credibility because plaintiff, as part of her Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) disclosures, had given defendant in July 2022 a misleading copy of Dr. Luciani's curriculum vitae (CV). Specifically, the CV erroneously indicated that Dr. Luciani was a current member of ACOG even though he had resigned from that organization in 2015.

¶ 9 After hearing argument on this issue multiple times, the trial court ruled that it would permit limited inquiry into Dr. Luciani's resignation from ACOG because he had used it as a credential to support his qualification as an OBGYN expert in this matter.

¶ 10 Plaintiff also moved *in limine* to exclude all evidence regarding plaintiff's prior drug use. Defendant argued that it wanted defense OBGYN expert Dr. Jeremy Miller to opine that plaintiff received Tylenol with codeine instead of a stronger narcotic because of her history of past drug use. The trial court ruled that it would not allow any evidence of plaintiff's drug use history being the reason for her lower pain tolerance. The court clarified, however, that it would consider

allowing expert testimony that plaintiff's lower pain tolerance was significant concerning the standard of care.

¶ 11     The jury trial was held from November 28, 2023, to December 8, 2023. Each side presented one expert OBGYN, one expert radiologist, and one expert pathologist as witnesses on their behalf. Relevant to the issues raised on appeal, the evidence presented by the parties showed that Dr. Okoe was an OBGYN employed by Advocate Medical Group since January 2015 at the end of her residency. She was board-certified in 2017. Plaintiff first saw Dr. Okoe in June 2015 for a consult regarding uterine fibroids. After doing some testing, Dr. Okoe recommended and plaintiff agreed to undergo a D&C to evaluate her endometrial lining and do a possible endometrial ablation. The D&C was done on July 23, 2015, and Dr. Okoe noted that there were no complications with the procedure.

¶ 12     Plaintiff was placed in the post-anesthesia care unit (PACU) for observation. As she came out of anesthesia about 2 p.m., she reported postoperative pain as 10/10. Several minutes later, she received acetaminophen-codeine (Tylenol with codeine #3), as ordered by Dr. Okoe. That afternoon, plaintiff continued to complain of unrelieved pain of 7/10 and 5/10. Her blood pressure was low, she became diaphoretic, and she complained of dizziness and nausea. Dr. Okoe was informed of plaintiff's condition and complaints but did not go to see her, did not request that any other doctor assess her, and provided no additional care recommendations aside from recommending a catheter if plaintiff was unable to urinate. Plaintiff was discharged home at 4:40 p.m.

¶ 13     Plaintiff continued to experience abdominal pain at home but did not take the prescribed pain medication. Three days later, she went to a hospital emergency room. An abdominal CT scan

showed pelvic bleeding, and plaintiff was admitted for an exploratory laparotomy, which revealed blood and feculent matter in her abdomen. The surgeon found an area of hemorrhagic staining of the sigmoid colon and a perforation of the colon, so he did a resection of the perforated colon and placed a colostomy. He examined the uterus and saw no active hemorrhage. Pathologic analysis of the resected colon tissue resulted in a diagnosis of "diverticulosis complicated with perforation and associated hemorrhage and inflammation." Plaintiff received medical care for several months through her recovery, removal of the colostomy, and subsequent hernia repair. Prior to these events, plaintiff had never been diagnosed with diverticulosis or diverticulitis.

¶ 14    Plaintiff's expert witness Richard Luciani, M.D., is a board-certified OBGYN. He testified that he was a member of the voluntary association ACOG before voluntarily resigning his membership in 2015. He explained that ACOG is an organization that publishes research articles in the field of obstetrics and gynecology to keep doctors updated as to what is happening in the field. He had joined ACOG in about 1980 but resigned in 2015 because he was not pleased with some of the positions it had taken relative to women's and children's healthcare and because ACOG asked him to answer a complaint made by a physician whom Dr. Luciani had given expert testimony against in unrelated litigation. Dr. Luciani answered the physician's complaint as requested by ACOG, heard nothing further from ACOG, and was not disciplined by ACOG.

¶ 15    Dr. Luciani opined that Dr. Okoe deviated from the standard of care by mishandling the Morcellator and causing the perforation of plaintiff's uterus and adjacent sigmoid colon, thereby releasing bowel contents into the abdominal cavity. He also opined that Dr. Okoe had failed to appreciate that plaintiff's complaints of severe pain while in the PACU required surgical evaluation to determine the cause of the pain.

¶ 16    Defense expert Jeremy Miller, M.D., a board-certified OBGYN, opined that plaintiff's uterus was not perforated during the D&C; rather, she suffered a spontaneous rupture of diverticulum just days following the D&C. Dr. Jeremy Miller opined that plaintiff reported pain following the D&C because all patients who have surgery experience pain afterwards, plaintiff has a medical history which suggests that she may have increased perception of pain more than the next person, and she also declined the standard offers of narcotic pain relievers when she was in the PACU. The fact that plaintiff did not take narcotic pain relievers had an impact on her pain, but her pain improved with time and she walked out the door. Dr. Jeremy Miller acknowledged, however, that plaintiff was given codeine, which is a narcotic. He also acknowledged that there is no standard protocol for pain medication for a patient after a D&C and that the standard of care depends on the patient.

¶ 17    Dr. Okoe testified that the reason plaintiff was in so much pain after the D&C was likely due to her coming out of general anesthesia, the "scarred down" lining of her uterus, and potentially having a full bladder. When the nurses called Dr. Okoe from the PACU about the level of plaintiff's pain, Dr. Okoe tried to honor plaintiff's request not to be given any narcotics, so Dr. Okoe tried a milder form of narcotics to see if it would resolve plaintiff's pain.

¶ 18    Defense OBGYN expert Dr. Jeremy Miller, defense radiology expert Dr. Frank Miller, defense pathology expert Dr. Michael Paterakos, and plaintiff's treating surgeon Dr. Ravi Deshmukh testified that the perforation in this case was caused by diverticulitis, and not the surgery performed by Dr. Okoe. Defendant's experts' opined that the operative report for the D&C, the postoperative course, plaintiff's condition at home after the D&C and prior to going to the hospital, the CT scan, the time interval between the D&C and when the bowel perforation was diagnosed,

the fact that no perforated uterus was ever found, and the definitive pathology findings all established and supported that there was no injury during the D&C procedure (and thereby no pain from a perforation in the D&C postoperative period).

¶ 19    The jury returned a verdict for defendant on December 8, 2023, and the trial court entered a judgment order in favor of defendant and against plaintiff. After briefing and oral argument, the trial court denied plaintiff's posttrial motion on May 1, 2024. Plaintiff timely appealed.

¶ 20                                  II. ANALYSIS

¶ 21    Defendant objects to plaintiff's statement of facts for failure to comply with Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020). Specifically, defendant points to several instances when plaintiff's statement of facts is incorrect or argumentative. We agree with defendant's assertion that the cited instances fail to comply with Rule 341(h)(6). These cited instances, however, do not hinder our ability to review the issues at hand, so we will disregard the cited instances instead of exercising our discretion to strike plaintiff's brief for failure to comply with the rules. See *Longo Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 18.

¶ 22                    A. *In Limine* Ruling Regarding ACOG

¶ 23    Plaintiff argues that the trial court committed plain error when it ruled *in limine* that it would allow certain limited evidence of the facts that one anonymous physician submitted a complaint against Dr. Luciani to ACOG, a voluntary organization, regarding Dr. Luciani's testimony against that physician in a medical case; ACOG then asked Dr. Luciani to respond to that complaint; Dr. Luciani filed a response and then resigned from ACOG; and the matter never resulted in any discipline. Plaintiff argues that the prejudice to her is readily apparent where the ACOG matter was a collateral issue and Dr. Luciani was the only OBGYN expert witness she

presented. Plaintiff contends that the jury's verdict rested largely on its assessment of the comparative weight it would attach to the opinions of the parties' expert witnesses and the challenged ACOG evidence may have improperly influenced the jury's assessment of Dr. Luciani's credibility.

¶ 24 Defendant argues that plaintiff forfeited review of this issue because, instead of timely objecting to the admission of the ACOG matter during the trial, plaintiff introduced the ACOG matter to the jury during Dr. Luciani's direct examination in plaintiff's case-in-chief.

¶ 25 Plaintiff, however, responds that the rule concerning forfeiture is relaxed when, after full exposition of the arguments by the attorneys has occurred, the court will not likely change its prior order. Also, plaintiff asserts that the parties and the trial court had agreed at the end of the December 1, 2023, motion *in limine* conference that the parties could refrain from repeated objections and would be considered to have standing objections to those issues.

¶ 26 Illinois law provides that

"[g]enerally, the denial of a motion *in limine* does not preserve an objection to disputed evidence that is introduced later at trial; a contemporaneous objection to the evidence at the time it is offered is typically required. [Citation.] This is because a ruling on a motion *in limine* is interlocutory and subject to reconsideration. [Citation.] On the other hand, to save a question for review, an objection need not be repeated each time similar matters are presented where the court has previously ruled. [Citations.] Once the court has ruled, a party is entitled to assume that the trial judge will continue to make the same ruling and that he need not repeat the objection. [Citation.] The question of whether the trial court's ruling is sufficiently definitive depends on the procedural posture of each

case. Once the full context of the evidentiary issue develops at trial, such that a motion thereon no longer presents the risk of an erroneous ruling that a pretrial motion *in limine* presents, any ruling on the merits is not interlocutory, and the unsuccessful movant need not object further to preserve the issue for review. [Citation.]" *Spyrka v. County of Cook*, 366 Ill. App. 3d 156, 165-66 (2006) (no forfeiture by defendant where the trial court reversed initial *in limine* ruling in favor of defendant near the end of the plaintiff's case, denied reconsideration of the ruling and alternate relief and two defense motions for a mistrial, and invited defense counsel to take the issue up on appeal).

¶ 27    Here, the trial court addressed the ACOG issue *in limine* multiple times prior to and during the trial and concluded each time that it was admissible subject to certain limitations. Also, although neither counsel had mentioned the ACOG matter in opening statements, plaintiff, like the trial court, assumed that defendant would cross-examine Dr. Luciani about the ACOG matter, so plaintiff attempted to blunt the impact of the trial court's adverse *in limine* ruling by introducing the ACOG matter, as limited by the trial court, in her case-in-chief. See *Brown v. Banker*, 284 Ill. App. 3d 401, 406 (1996) (where the trial court granted the defendant's motion *in limine* to admit prior-injury evidence, the plaintiff did not forfeit review of the issue even though he did not contemporaneously object to the evidence at trial and introduced the challenged evidence himself); *Nave v. Rainbo Tire Service, Inc.*, 123 Ill. App. 3d 585, 590 (1984) (by filing a motion *in limine* and objecting to defense counsel's remarks during opening statements, plaintiff preserved for review the issue of the admissibility of due-care evidence); *People v. Spates*, 77 Ill. 2d 193, 199-200 (1979) (the defendant's attempt to blunt the impact of the trial court's adverse *in limine* ruling by introducing his prior conviction in his case-in-chief properly preserved the issue for review).

¶ 28 Furthermore, the record is not clear whether the trial court's discussion at the end of its *in limine* conference on December 1, 2023, meant that both parties or just defendant had made a standing objection to the *in limine* rulings to avoid repeating those objections before the jury. Given this record, and particularly the uncertainty regarding plaintiff's standing objection on the ACOG issue, we find that plaintiff has not forfeited review of the ACOG issue because she was entitled to conclude that the trial judge would continue to make the same ruling, and it seems that the trial court ruled that she was not required to repeat her objection.

¶ 29 According to the record, the trial court addressed this ACOG issue with the parties multiple times prior to and during the trial. Ultimately, the court stated that it would have excluded the evidence concerning the ACOG matter because it was only a pending investigation, no findings were ever made, and then Dr. Luciani voluntarily left the organization. However, because Dr. Luciani erroneously indicated in his 2022 CV, as produced to the defense in plaintiff's Rule 213(f) responses to interrogatories, that he was still a fellow of ACOG when in fact he had resigned in 2015, the trial court ruled that it would allow limited evidence concerning the ACOG matter since it was relevant to Dr. Luciani's credibility where he had used his ACOG membership as a credential to support his qualifications as an OBGYN expert. Before Dr. Luciani testified at the trial in this matter, the trial court restated its *in limine* ruling, explaining that the evidence concerning the ACOG matter should

> "be almost verbatim as to what was said [at Dr. Luciani's deposition], nothing more, as to what he answered in the dep about a complaint being filed, and then he can explain he withdrew for whatever reasons, because he didn't agree with ACOG, not anything more than that on cross."

On appeal, plaintiff asserts that the trial court's rationale for allowing this evidence is misplaced because the jury never saw Dr. Luciani's CV and was never going to see it.

¶ 30    "[I]t is the function of the trial judge to weigh the probative value and potential prejudicial effect of evidence, and the decision of the trial judge [in ruling on a motion *in limine*] will not be reversed absent an abuse of discretion." *In re Commitment of Moore*, 2023 IL App (5th) 170453, ¶ 100. "An abuse of discretion exists where no reasonable person would take the position adopted by the trial court [citation], or where the trial court acts arbitrarily, fails to employ conscientious judgment, and ignores recognized principles of law." *In re Commissioner of Banks & Real Estate*, 327 Ill. App. 3d 441, 476 (2001). An error in the admission and exclusion of evidence does not require reversal unless one party has been prejudiced, or the result of a trial has been materially affected. *Magna Trust Company v. Illinois Central Railroad*, 313 Ill. App. 3d 375, 395 (2000).

¶ 31    We find no error in the admission of the challenged evidence. The evidence of Dr. Luciani's candor and the accuracy of his representations in his CV, which was produced pursuant to Rule 213(f), about his credentials to testify as an OBGYN expert was highly probative on the issue of his credibility. See *Treadwell v. Downey*, 209 Ill. App. 3d 999, 1003 (1991) ("[T]he weight to be assigned to an expert opinion is for the jury to determine in light of the expert's credentials and the factual basis of his opinion."); *Poole v. University of Chicago*, 186 Ill. App. 3d 554, 561 (" 'Subject to the discretion of the judge in determining its relative value for such purpose, *** it is relevant and proper on cross-examination to inquire into collateral matters revealing the past conduct of the witness which tends to impeach his credibility ***.' " (quoting Spencer A. Gard, Illinois Evidence Manual, sec. 22:12, at 449 (2d ed. 1979))). Dr. Luciani had been using the outdated imprimatur of ACOG and his status as a fellow thereof to boost his credibility while

testifying in litigation. Furthermore, Illinois Supreme Court Rule 213(h) provides that "[a]nswers to interrogatories may be used in evidence to the same extent as a discovery deposition. Ill. S. Ct. R. 213(h) (eff. Jan. 1, 2018). Dr. Luciani's misleading CV was attached to plaintiff's Rule 213 answers to interrogatories. Thus, it was proper to allow defendant to cross-examine Dr. Luciani regarding the accuracy of his disclosed CV.

¶ 32    Furthermore, the trial court carefully crafted its ruling to avoid undue prejudice by barring any reference to the substance of the complaint or the underlying circumstances as to why the complaint was made. Accordingly, there was no abuse of discretion in admitting this evidence subject to the limits imposed by the trial court.

¶ 33              B. Defendant's Cross-Examination and Closing Argument

¶ 34    Plaintiff argues that she was denied a fair trial when defense counsel deliberately violated the court's clear *in limine* ruling on the ACOG issue during cross-examination and closing argument. Specifically, plaintiff contends that defense counsel erroneously stated that (1) a "complaint" was filed by a "group of doctors" who reviewed Dr. Luciani's testimony as opposed to one disgruntled doctor making a complaint with ACOG, (2) ACOG conducted an "investigation" as opposed to a letter of inquiry to Dr. Luciani, and (3) ACOG had made findings against Dr. Luciani and "censured" him for giving "false testimony." Plaintiff argues that defense counsel did this in the broader context of informing the jury that plaintiff's claim must fail unless the jurors believed Dr. Luciani. Plaintiff adds that at the posttrial motion hearing on this issue, the trial court stated that defense counsel's closing argument went "far afield" and "against" the court's *in limine* ruling. Furthermore, plaintiff contends that the court's sustaining an objection and

instructing the jury regarding the evidence was insufficient to cure the severe prejudice where the parties each presented only one OBGYN expert witness to the jury on the standard of care.

¶ 35    "The purpose of an *in limine* order is to exclude inadmissible evidence, not to create a trap that results in a new trial if the court determines in retrospect that the order was violated." *Cunningham v. Miller General Insurance Co.*, 227 Ill. App. 3d 201, 206 (1992). A new trial may be granted for a violation of an *in limine* order only if the order's prohibitions are specific, the violation is clear, and the violation deprived the moving party of a fair trial. *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 871-72 (2004); *Kwon v. M.T.D. Products, Inc.*, 285 Ill. App. 3d 192, 198 (1996). Furthermore, the latitude afforded in cross-examination is within the discretion of the trial court, reversible only for a clear abuse of discretion resulting in manifest prejudice to a party. *People v. Torres*, 200 Ill. App. 3d 253, 265 (1990). The principal safeguard against errant expert testimony is the opportunity of opposing counsel to cross-examine, which includes the opportunity to probe bias, partisanship, or financial interest. *Trower v. Jones*, 121 Ill. 2d 211, 217 (1988). It is of ever-increasing importance to bring to the jury's attention facts by which the jury may reasonably discount the credibility of an expert's testimony. *Id.*

¶ 36    According to the record, on cross-examination, defense counsel elicited Dr. Luciani's testimony that his CV, which was submitted to the defense in 2022, indicated that he was a fellow of ACOG since 1982 but with no end date even though he actually had resigned voluntarily in 2015. Then, the following occurred:

"MS. SLAVICK [(DEFENSE ATTORNEY)]: That [Dr. Luciani's resignation] was only after ACOG, an organization of your peers, got a report from a doctor *that you had*

*given false testimony in a case like this one, and they filed a complaint against you* asking you to explain yourself and the testimony that you had provided, true?

A. False.

Q. False.

Doctor, you gave a discovery deposition in this case. It's up there with you. On page 25, this question and this answer appear:

'And that's what we're talking about here, you gave an expert opinion, you gave a deposition, and ultimately a complaint was submitted to ACOG, correct?

That's correct.'

A. That is correct.

MR. M. PATTERSON [(PLAINTIFF'S ATTORNEY)]: Objection, that's not impeaching.

THE COURT: Yeah, that isn't impeaching. Disregard Counsel's comment.

DEFENSE ATTORNEY: While ACOG was investigating you and had a complaint pending against you, you withdrew from ACOG, true?

PLAINTIFF'S ATTORNEY: Objection, [Y]our Honor.

THE COURT: No, that's the question you should have asked. Ask it again. I want to hear it again. They filed—go ahead, one more time.

DEFENSE ATTORNEY: While ACOG was investigating you and had a complaint filed against you, you voluntarily resigned during that process, true?

A. I gave ACOG a month to answer, and then I–

DEFENSE ATTORNEY: Objection, Judge.

A. –sent a letter of resignation in.

THE COURT: Answer that question, Doctor.

A. I resigned a month after I sent in my letter justifying my opinions, which were right out of their brochures.

DEFENSE ATTORNEY: Objection, Judge.

THE COURT: Sustained, sustained. Counsel can bring out that which is necessary for Plaintiff. Go ahead.

DEFENSE ATTORNEY: You are no longer with ACOG, true?

A. That is true.

Q. Yeah, you haven't been since 2015, true?

A. That's correct." (Emphasis added.)

¶ 37    Later, on redirect, the following occurred:

"PLAINTIFF'S ATTORNEY: You were asked about ACOG, a voluntary organization, and Defense Counsel kept trying to suggest you were under investigation.

Were you under any kind of investigation, Doctor?

A. Not at all.

Q. You mentioned too that ACOG used to be the American College of OB/GYN, now it's the American Congress of OB/GYN and that you left that organization for multiple reasons?

A. I did.

Q. Why?

A. It's become too political. They even changed their name to the American Congress, and based on things that they have published and the way they've acted in the recent years, I don't believe they're protecting women and children anymore like they were supposed to."

¶ 38   Later, on recross-examination, the following occurred:

"DEFENSE ATTORNEY: Doctor, *you explained to us that ACOG filed an actual complaint against you*?

A. No.

Q. Okay.

A. A physician filed a complaint.

DEFENSE ATTORNEY: Objection, Judge. This is his testimony.

THE COURT: I'm reading it. You're talking about from his discovery dep, correct?

DEFENSE ATTORNEY: I am.

THE COURT: Page 24.

DEFENSE ATTORNEY: Yep.

Page 24, the Defendant was exonerated by—I'm sorry, I'm going to start—

PLAINTIFF'S ATTORNEY: Objection, [Y]our Honor.

THE COURT: Yeah, approach.

(Whereupon a side bar was had outside the presence of the court reporter.)

DEFENSE ATTORNEY: How about I sum it up with a complaint was filed against you, ACOG sent you that complaint, and that complaint dealt with opinions you had given against a doctor, true?

A. True." (Emphasis added.)

¶ 39    Plaintiff cannot demonstrate that she suffered "manifest prejudice" from the cross-examination sufficient to warrant reversal. The record establishes that when defense counsel attempted to erroneously impeach Dr. Luciani with evidence that ACOG—rather than an anonymous doctor—had filed a complaint against him for giving false testimony, Dr. Luciani denied the allegations and the trial court ruled that his deposition testimony was not impeaching, sustained plaintiff's counsel's objection, and instructed the jury to disregard defense counsel's comment. Furthermore, on redirect, Dr. Luciani testified that he was not under any kind of investigation by ACOG and explained his reasons for leaving that organization. When the ACOG issue reemerged on recross-examination, a sidebar was held and ultimately Dr. Luciani affirmed only that a complaint was filed against him, ACOG sent him that complaint, and it dealt with opinions he had given against a doctor. In addition, we presume that the jury followed the trial court's instruction to disregard defense counsel's erroneous comment about ACOG filing a complaint against Dr. Luciani for giving false testimony. See *Allen v. Sarah Bush Lincoln Health Center*, 2021 IL App (4th) 200360, ¶ 192. Moreover, "[g]enerally, the prompt sustaining of an objection by a trial judge is sufficient to cure any error in a question or answer before the jury." (Internal quotation marks omitted.) *Id.* Accordingly, we find that the cross-examination at issue did not thoroughly discredit Dr. Luciani or his medical opinions in the eyes of the jury.

¶ 40 Plaintiff also argues that defense counsel violated the court's *in limine* order regarding the ACOG issue during closing argument.

¶ 41 Attorneys are permitted wide latitude in closing argument. See *Lauman v. Vandalia Bus Lines, Inc.*, 288 Ill. App. 3d 1063, 1071 (1997). Comments on the evidence during closing argument are proper if proven by direct evidence or if reasonably inferable from the facts. *Kwon*, 285 Ill. App. 3d at 199. A judgment will not be reversed unless the challenged remarks were of such character as to prevent a party from receiving a fair trial. *Lauman*, 288 Ill. App. 3d at 1071. In determining whether a party has been denied a fair trial due to improper closing argument, a reviewing court gives considerable deference to the trial court, which is in a superior position to assess the effect of counsel's statements. *Id.* An improper closing argument will not warrant reversal without a showing of substantial prejudice. *Id.* at 1069.

¶ 42 According to the record, defense counsel argued that

"Dr. Luciani is a professional expert. *** His business is being a medicolegal expert for cases like this where they can't find a local, reputable doctor to support their claim so they use advertising to go find people like Dr. Luciani and then they pay him $20,000 just to show up here and offer whatever testimony they want. ***

"Now, Dr. Luciani had to admit to you as part of his testimony in this case that *** *a group of doctors* reviewed testimony that Dr. Luciani gave against a doctor, and *they filed a complaint against him* because *they* did not appreciate that a doctor *was giving false testimony* in medical malpractice cases. He was *censured by his own organization [ACOG]. When they filed the complaint against him,* instead of—" (Emphases added.)

- 18 -

Then, the trial court sustained plaintiff's objection and stated, "that's not what the evidence is. But ladies and gentlemen, what Counsel is telling you is not evidence. If it's not borne out by what the evidence is, please, disregard what she is saying."

¶ 43    Defense counsel continued that Dr. Luciani admitted that, while under investigation by ACOG, he resigned and is no longer a member of ACOG, yet he still comes "into courtrooms and testifies to whatever he wants to, to whatever plaintiff[s] pay him to." The trial court overruled plaintiff's objection to that comment.

¶ 44    Although the prejudicial effect of an improper argument cannot be erased from the minds of jurors by an admonishment from the court, the act of properly sustaining an objection and instructing the jury to disregard such argument has usually been viewed as sufficient to cure any prejudice. See *Hartman v. Pittsburgh Corning Corp.*, 261 Ill. App. 3d 706, 728 (1994). The record demonstrates that after defense counsel's erroneous comments were made, the trial court immediately sustained plaintiff's objection and instructed the jury to disregard the comments. Moreover, defense counsel thereafter did not repeat the erroneous comments but, rather, correctly summarized the evidence. Also, during final instructions, the trial court instructed the jurors that remarks made by the attorneys in closing arguments are not evidence. The trial court was in the best position to determine the effect of the challenged comments and whether they were so prejudicial as to deny plaintiff a fair trial. After reviewing the record, we do not find that plaintiff was substantially prejudiced or was denied a fair trial as a result of the challenged comments. In our judgment, the court's actions were sufficient to cure any prejudice.

¶ 45    We conclude that the court did not abuse its discretion in denying plaintiff's motion for a new trial based on the ACOG issue.

¶ 46                              C. Evidence of Plaintiff's Pain Sensitivity

¶ 47     Plaintiff argues that the trial court committed reversible error by allowing Dr. Jeremy Miller's "unfounded speculative" testimony that (1) plaintiff's "medical history" made her have an increased perception of pain, (2) she did not get standard narcotic medication following her D&C, and (3) her not taking stronger narcotics impacted her perception of pain following the D&C. Plaintiff argues that these opinions were all inadmissible because they were undisclosed under Rule 213, speculation, and prejudicial. Plaintiff believes that the theory of her so-called predisposing risk factor for a low pain tolerance based on her medical history invited the jury to speculate that she had a history of drug addiction.

¶ 48     According to the record, plaintiff had moved *in limine* to exclude all evidence regarding plaintiff's prior drug use. She had testified at her deposition that she was a recovered addict and had stopped using drugs before the care at issue. Plaintiff argued that her prior drug use was irrelevant and highly prejudicial, and only defense OBGYN expert Dr. Jeremy Miller had speculated that plaintiff might have had a higher or lower pain tolerance based on her past drug use. Defendant argued that it wanted Dr. Jeremy Miller to opine that plaintiff received Tylenol with codeine instead of a stronger narcotic because of her history of past drug use. Defendant acknowledged, however, that no witness opined that plaintiff was given Tylenol with codeine because she could not be given Norco. The trial court ruled that it would not allow any evidence of plaintiff's drug use history being the reason for her lower pain tolerance. The court clarified, however, that it would consider allowing expert testimony that plaintiff's lower pain tolerance was significant concerning the standard of care because if someone like her with a lower pain tolerance

has a pain level of 6 out of 10 after a D&C, that 6 is not truly representative of what a regular postoperative patient would experience.

¶ 49   In his discovery deposition, Dr. Jeremy Miller was asked whether it was true that people who have a history of abusing drugs like crack-cocaine or opiates have a different pain tolerance than people who do not have that history, and Dr. Miller responded, "I think that's a fair assertion." He talked about certain possibilities in various patients and then stated, "But one of the possibilities is a lower pain tolerance. In this case, she [plaintiff] has a predisposing risk factor." When he was asked about plaintiff's inability to take stronger narcotic pain medications, he responded, "It would have complicated her pain management postoperatively, correct." Dr. Miller was not referring to plaintiff's actual pain, but rather to what a doctor treating a patient like plaintiff might consider in the face of a complaint of pain that might be abnormal.

¶ 50   During Dr. Jeremy Miller's trial testimony, he was asked whether he had an opinion regarding why plaintiff had reported that she was in pain following the D&C. Plaintiff's counsel objected on the basis that this opinion was not disclosed pursuant to Rule 213, but the trial court overruled the objection, finding that the question related to a "natural corollary" to the disclosure that Dr. Jeremy Miller would testify as to why plaintiff's pain improved. Dr. Jeremy Miller responded that all patients experience pain after surgery, plaintiff has a medical history which suggests that she may have an increased perception of pain more than the next person, and she declined the standard offers of narcotic pain relievers when she was in the PACU.

¶ 51   Plaintiff did not object to Dr. Miller's answer to the question, thereby waiving any claimed error of speculation or prejudice. See *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 573-74 (2001). Moreover, Dr. Miller used the term "medical history," as the trial judge

had suggested, to avoid any direct discussion of plaintiff's history of drug abuse. Plaintiff fails to identify any error by the trial court, and there was no mention before the jury of any of plaintiff's past history of drug abuse.

¶ 52    We conclude that plaintiff's argument that the trial court committed reversible error regarding the admissibility of Dr. Jeremy Miller's testimony lacks merit.

¶ 53                                III. CONCLUSION

¶ 54    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 55    Affirmed.